COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judge Bray and Senior Judge Duff
Argued at Alexandria, Virginia


DEBRA ANN BRUGGER

v.   Record No. 2446-95-4          MEMORANDUM OPINION[*] BY
                                   CHIEF JUDGE NORMAN K. MOON
ROGER L. BRUGGER                         JUNE 4, 1996


             FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                   Benjamin N. A. Kendrick, Judge

          Paula Winchester Rank (Lawrence H. Bowen;
          Byrd, Mische, Bevis, Bowen, Joseph &
          O'Connor, P.C., on briefs), for appellant.

          Benton S. Duffett, III (Grenadier, Davis &
          Simpson, P.C., on brief), for appellee.


     Roger L. Brugger and Debra Ann Brugger appeal from the final

decree of divorce entered on October 18, 1995.  Mr. Brugger

appeals from the trial court's decision permitting Mrs. Brugger

to amend her complaint in order to request equitable

distribution.  Mrs. Brugger appeals from the court's distribution

of marital assets, and from the court's failure to award

attorney's fees.  We affirm the trial court's decision permitting

Mrs. Brugger to amend her complaint, reverse the trial court's

distribution of marital assets, and affirm the trial court's

denial of attorney's fees.

     Roger and Debra Ann Brugger married on October 11, 1969 and

separated on August 9, 1992.  At the time of trial, Mrs. Brugger

---

        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

was 45 years of age and Mr. Brugger was 47.  The parties had one child, born in 1972.

Mr. Brugger was on active duty in the United States Air Force throughout the marriage.  From the time of the marriage through 1981, Mrs. Brugger took care of the household and raised the parties' child, performing occasional part-time work outside the home.  The parties moved nine times during the marriage, and Mrs. Brugger was responsible for making the arrangements, including one move overseas.  Mr. Brugger's career involved extended duty away from the family on several occasions, leaving Mrs. Brugger entirely responsible for the household.

Mrs. Brugger had left school in order to marry.  In approximately 1980 she began to attend night school for nursing and obtained her R.N. degree in 1981.  Immediately upon graduating she moved to Germany with her husband, and volunteered with the Red Cross until a nursing position became available.  From that time forward, at each duty station, she secured full-time employment as a nurse, and often held down a part-time job as well.

In the early years of the marriage, Mrs. Brugger participated in activities expected of military wives, such as membership in the NCO wives' club.  In the 1980's, she became less involved in these activities.  Mrs. Brugger testified that her husband had thanked her publicly for helping advance his career, and proffered the testimony of a family friend to the effect that Mrs. Brugger was an asset to Mr. Brugger's career.

Mr. Brugger testified that Mrs. Brugger had a "little" positive effect on his career, and acknowledged that he may have thanked her publicly.

The parties separated briefly in July 1983, while they were living in Germany. Mrs. Brugger had a separation agreement prepared and returned with the parties' child to the United States. The parties reconciled in August when Mr. Brugger returned to the United States. Mrs. Brugger acknowledged that she was unhappy in the marriage due to her husband's travel, including for frequent fishing trips, and alleged infidelity. Mrs. Brugger left the marital residence in August 1992.

Mr. Brugger will take mandatory retirement from the Air Force on April 1, 1998. His work in the Air Force has been in the field of offset printing, for the past several years in a supervisory capacity. Offset printing is rapidly being replaced by other technologies, of which Mr. Brugger has minimal knowledge. He testified that the jobs available in the offset printing field would pay $18,000 to $24,000 per year. He earns approximately $42,000 in the Air Force, and his housing in Air Force quarters is free.

At the time of trial, Mrs. Brugger was earning $37,500 per year. She earned $53,000 in 1994, but at the time of trial the hours of the part-time job that produced the extra income had been greatly reduced, and she was seeking additional part-time employment.

## WIFE'S AMENDMENT OF CROSS-BILL
## TO ADD EQUITABLE DISTRIBUTION CLAIM

On March 25, 1994, Mr. Brugger filed a bill of complaint for divorce, requesting spousal support, equitable distribution, and attorney's fees. In her cross-bill, Mrs. Brugger did not request equitable distribution, stating instead that there were "support and property issues that need to be resolved, however, the parties expect to enter into a Property Settlement Agreement resolving all issues arising between the parties . . . ." The prayer for relief requested that any PSA be incorporated, but not merged, into the final decree.

Mr. Brugger presented evidence on grounds for divorce to a commissioner in chancery, who recommended that he be granted a divorce on the grounds of having lived separate and apart for more than one year. The parties were unable to reach agreement on the property issues, and final hearing was set for February 2, 1995. The parties expected to present evidence pertaining to equitable distribution at that hearing. On the day before trial, Mr. Brugger filed a praecipe withdrawing the request for equitable distribution from his complaint and striking it from the notice of hearing.

At the hearing on February 2, 1995, Mr. Brugger requested that the final decree be entered without consideration of equitable distribution. Mrs. Brugger objected, and moved to amend her cross-bill to request equitable distribution. The court entered the final decree, and Mrs. Brugger filed a motion

- 4 -

for reconsideration.  The court then vacated the final decree and granted leave to Mrs. Brugger to file an amended cross-bill requesting equitable distribution.  The court also granted leave to Mr. Brugger to reinstate his own request for equitable distribution.

Code § 20-107.3 provides that the court shall, "upon the request of either party," undertake the process of equitable distribution.  Such requests are generally made in the prayer for relief of either the bill, cross-bill, or answer.  Gologanoff v. Gologanoff, 6 Va. App. 340, 347, 369 S.E.2d 446, 449-50 (1988).  Here, the trial court correctly determined that Mrs. Brugger's reference in the cross-bill to "property issues that need to be resolved" did not constitute a request for equitable distribution under Gologanoff.  Having so ruled, the trial court had ample discretion to vacate the decree and permit amendment of the cross-bill.

Mrs. Brugger's request for reconsideration was filed within twenty-one days after entry of the decree, and the court therefore had jurisdiction to vacate the decree.  Rule 1:1.  The right to file an amended pleading rests in the sound discretion of the trial judge, and shall be liberally granted in furtherance of the ends of justice.  Rule 1:8; Alphin v. Alphin, 15 Va. App. 395, 400, 424 S.E.2d 572, 575 (1992); Rosenberg v. Rosenberg, 210 Va. 44, 48-49, 168 S.E.2d 251, 254 (1969).  Here, where the parties had prepared for trial on equitable distribution and Mr. Brugger withdrew his request for that relief at the eleventh

hour, the trial court did not abuse its discretion to permit an amended cross-bill.

## EQUITABLE DISTRIBUTION

The primary assets for the trial court to consider were Mr. Brugger's military pension and survivor's benefits and a $22,000 mutual fund accumulated through deductions from Mr. Brugger's paycheck. Also, the parties borrowed $5,000 from a small trust fund belonging to Mrs. Brugger. The trial court awarded Mrs. Brugger fifteen percent of the marital share of military retirement benefits and fifteen percent of the mutual fund. The court also made a $5,000 lump sum distribution to Mrs. Brugger, apparently to account for the debt Mr. Brugger owed to her trust fund.

In making equitable distribution, the trial court must consider all of the factors set forth in Code § 20-107.3(E). Failure to do so is reversible error. Alphin v. Alphin, 15 Va. App. 395, 405, 424 S.E.2d 572, 577 (1992). This Court must be able to determine from the record that the trial court has given substantive consideration to the evidence as it relates to Code § 20-107.3. See Donnell v. Donnell, 20 Va. App. 37, 42, 455 S.E.2d 256, 258 (1995); Trivett v. Trivett, 7 Va. App. 148, 153, 371 S.E.2d 560, 563 (1988). If its findings are not supported by the evidence in the record, the court has abused its discretion, and the findings must be reversed. Trivett, 7 Va. App. at 154, 371 S.E.2d at 563.

The court's consideration of the statutory factors "entails

- 6 -

more than a mere recitation in the record or decree that all the statutory factors have been considered or reviewed." Alphin, 15 Va. App. at 405, 424 S.E.2d at 578. The trial court's failure to articulate any reason for its decision hinders appellate review and suggests that the award was not based on the required factors. Artis v. Artis, 4 Va. App. 132, 137, 354 S.E.2d 812, 815 (1987). Where the trial court failed to make specific findings or explain its decision, we must examine the record to determine whether there is credible evidence to support the award. Trivett, 7 Va. App. at 154, 371 S.E.2d at 563.

Here, in a brief ruling from the bench, the trial judge recited the statutory factors and stated that to the extent evidence was presented on each factor, he considered it. He then made the rulings set forth above. The court made no factual findings and offered no explanation for his decision. Accordingly, we examine the record to determine whether the trial court abused its discretion in distributing the marital assets.

We hold that the record shows it was an abuse of discretion to award less than twenty-five percent of the marital portion of the pension to Mrs. Brugger. At trial, Mr. Brugger testified as follows:

> Q. And in terms of the Court's division of that asset, in terms of the percentage of the marital portion of your retirement, what percentage are you asking the Court to award to your wife, as being fair based upon what you

> believe her contribution was to the marriage?
>
> A.   Twenty-five percent.

In light of this testimony and the other evidence in the record, the trial court had no basis to award only fifteen percent of the pension to Mrs. Brugger.

Mrs. Brugger argues that the trial court erred in failing to determine the marital share of the pension before making the distribution.  We agree.  The marital share is determined according to a formula set forth in Code § 20-107.3(G)(1).  The trial court should determine the marital share of the pension before it makes a marital award, either from the pension or from the remainder of the marital estate.  See Banagan v. Banagan, 17 Va. App. 321, 326, 437 S.E.2d 229, 232 (1993).  We remand the case to the trial court in order for the trial court to make this determination.

## ATTORNEY'S FEES

The award of attorney's fees in a divorce case is a matter committed to the sound discretion of the trial court.  Alphin, 15 Va. App. 406, 424 S.E.2d at 578.  The trial court did not abuse its discretion in failing to award attorney's fees to Mrs. Brugger.

Affirmed in part, reversed in part, and remanded.

- 8 -